UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUONG THU NGUYEN-WILHITE, *on behalf of herself and others similarly situated*,

                            Plaintiff,

            -against-

TAPESTRY, INC.,

                            Defendant.

---

Case No. 1:23-cv-03339 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

Huong Thu Nguyen-Wilhite ("Plaintiff"), on behalf of herself and others similarly situated, brings this one-count complaint against her former employer, Tapestry, Inc. ("Defendant" or "Tapestry"), alleging a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq. See generally* Dkt. 1-1 ("Compl."). Plaintiff now moves to certify a class under Federal Rule of Civil Procedure ("Rule") 23. Dkt. 47; *see* Dkt. 48 ("Br."). Defendant opposes certification. *See* Dkt. 56 ("Opp."). Briefing on Plaintiff's motion concluded on October 16, 2024. *See* Dkt. 60 ("Reply"); Dkt. 63 ("Sur-reply"); Dkt. 64 ("Resp."). For the reasons set forth below, the Court DENIES Plaintiff's motion for class certification.

## BACKGROUND

### I.    Plaintiff's Complaint

On February 17, 2023, Plaintiff initiated her lawsuit in state court, which Defendant timely removed to this Court on April 20, 2023. *See generally* Dkt. 1. In her Complaint, Plaintiff alleges that Tapestry routinely relies on consumer background reports "to take adverse employment actions" against job applicants and current employees without first providing those individuals with "sufficient and timely notification and a copy of the report

and a summary of rights" as required by section 1681b(b)(3) of the FCRA.  Compl. ¶ 1; *see id.* ¶ 16; *see also* 15 U.S.C. § 1681b(b)(3)(A) ("[I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter . . . .").  Specifically, Plaintiff avers that once Tapestry's vendor "adjudicates an applicant or employee as ineligible for a background report . . . Tapestry will, in effect, adopt [the vendor's] adjudication as its own, without any further process given to the job applicant, and take adverse action based upon that adjudication."  Compl. ¶¶ 20-21.  Plaintiff further alleges that "[f]or existing employees, an adjudication result indicating that the employee has failed the background check or is ineligible for hire will lead to the employee's immediate termination, suspension, or other adverse employment actions."  *Id.* ¶ 22.

## II.    Factual Background

The Court draws the following facts from "the depositions, declarations, and exhibits submitted by the parties in connection with this motion," and "resolve[s] factual disputes to the extent necessary to decide the class certification issue."  *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 283 (S.D.N.Y. 2012) (citing *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 27, 41-42 (2d Cir. 2006)), *aff'd*, 780 F.3d 70 (2d Cir. 2015).

### A.  Tapestry's Background-Check Process

Tapestry operates retail stores throughout the United States for several brands, including Coach.  *See* Dkt. 56-5 ("Andrews Dep. Tr.") at 15:12-23, 17:9-13.  The company "conduct[s] background checks on all applicants for . . . employment" in North America, which entails "verifying information in a candidate's application and running criminal

2

checks." *Id.* at 19:16-24. After an applicant is "provided with an offer and . . . the offer is accepted," Tapestry will initiate a background check with the applicant's consent. *Id.* at 23:11-24:3. Since 2018, these background checks have been conducted by a vendor, First Advantage Background Services Corp. ("First Advantage"). *Id.* at 24:4-15; *see* Dkt. 56-14 at 2. Tapestry supplies First Advantage with a matrix of hiring criteria for each element of a background check — such as criminal history — to inform First Advantage when it should flag an applicant's report for further review by Tapestry. Andrews Dep. Tr. at 31:3-32:11, 32:24-33:3. After a background check is completed, First Advantage will mark each element of the report as "pass" if Tapestry's hiring criteria are met, or "decisional" if they are not. *Id.* at 33:4-34:19.

If First Advantage returns an applicant's report without any "decisional" flags, Tapestry will change the applicant's background-check status to "eligible" in Tapestry's employment portal, which means "the hiring manager can move forward with the next part of the hiring process." Andrews Dep. Tr. at 66:2-67:6; *see* Dkt. 66-2 at 3. If there are "decisional" flags on an applicant's report, Tapestry will review the report to confirm whether the applicant satisfies Tapestry's hiring criteria. Andrews Dep. Tr. at 66:2-67:6 at 75:5-18. If those criteria are not met, Tapestry will mark the background check as "on hold" in the applicant's profile, which triggers an "automated process with First Advantage," *id.* at 72:2-16, and "tells the store that they cannot move forward with the applicant [or] release that position to someone else," *id.* at 81:1-9; *see* Dkt. 66-2 at 3. When the "on hold" process is initiated, First Advantage will send the applicant a "pre-adverse letter," which notifies the applicant that Tapestry "has made a preliminary decision to rescind their conditional offer of employment" based on the results of the background check, encloses a copy of the report and a summary of rights under the FCRA, and outlines a process for the applicant to dispute the

accuracy of the report within five business days.  Dkt. 48-2 at 2-3; *see* Andrews Dep. Tr. at 72:8-20.

If the applicant timely lodges a dispute with First Advantage, Tapestry receives an email notification and directs the relevant store to "save[] [a position] for that applicant to allow them to go through the dispute process."  Andrews Dep. Tr. at 80:16-25; *see id.* at 78:24-79:9.  If the dispute is successful — that is, if "First Advantage does their investigation and determines that either the information does not belong to that candidate or . . . cannot be reported" — "the background check . . . clear[s]," *id.* at 77:7-14, and Tapestry will change the applicant's background-check status from "on hold" to "eligible," *id.* at 78:19-23.  If, after five business days, the applicant has not successfully "disputed the information that was used to determine their eligibility, . . . First Advantage will automatically send [an] adverse letter" to the applicant and change the applicant's background-check status from "on hold" to "ineligible."  *Id.* at 72:22-73:2; *see* Dkt. 66-2 at 3.  The adverse letter informs the applicant that Tapestry "has determined that [the Applicant] [is] not eligible for employment . . . based in whole or in part upon information obtained" in the background report and that Tapestry "is rescinding their conditional offer of employment."  Dkt. 48-4 at 2.

### B.  Plaintiff's Experience with Tapestry's Background-Check Process

Plaintiff began working at a Coach store in Palo Alto, California, in March 2022, before resigning in July 2022 because she was moving away from the area.  Dkt. 56-4 ("Pl. Dep. Tr.") at 8:10-18.  In mid-November 2022, Plaintiff reapplied for a sales position at a Coach store in Scottsdale, Arizona, and was verbally offered the job.  *Id.* at 8:19-9:3, 132:10-22; Dkt. 56-6 ("Cohen Dep. Tr.") at 18:11-19:7.  On November 17, 2022, Plaintiff authorized First Advantage to conduct a background check to determine her employment eligibility.  Pl. Dep. Tr. at 182:3-6; *see* Dkt. 56-14 at 2 (authorization form states: "I understand and agree

that the information contained in any . . . report will be used to determine eligibility for employment and, if I am hired, my eligibility for continued employment, and that action may be taken by [Tapestry] based on this information."). On November 18, 2022, Paul Andrews, Director of Asset Protection for Tapestry, "conditional[ly] clear[ed]" Plaintiff to commence employment while the background check was pending. Dkt. 56-15 at 2 (Andrews internally relaying that the store should expect some background checks to have delays because of the holiday season); Andrews Dep. Tr. at 103:10-21 (explaining that Tapestry occasionally offered conditional clearance to applicants under certain circumstances, such as where delayed background checks could result in "los[ing] potential candidates"). On November 20, 2022, Plaintiff started working at the Scottsdale store and worked several more days that week. Pl. Dep. Tr. at 129:15-131:2.

On November 28, 2022, Andrews informed Natalie Cohen, the District Manager for the Scottsdale store, that he had received the results of Plaintiff's background check, which indicated that Plaintiff had been convicted of petty theft. Dkt. 66-3 at 3; *see* Dkt. 48-2 at 12. Andrews informed Cohen that he "would not have cleared" Plaintiff "[h]ad [he] seen the theft criminal record" and explained that he would send a pre-adverse letter to Plaintiff after "she [was] spoken to." Dkt. 66-3 at 3. Cohen informed Breanna Belle, the Scottsdale Store Manager, about the background check, and asked her to "take [Plaintiff] off the schedule for the day." Cohen Dep. Tr. at 33:10-24. When Plaintiff arrived for her shift later that day, Belle informed Plaintiff that she "had to go home" because her background report indicated a theft conviction. Dkt. 56-7 ("Belle Dep. Tr.") at 34:2-4; *see id.* at 33:2-22; Pl. Dep. Tr. at 147:22-148:16; Andrews Dep. Tr. at 132:9-12. Plaintiff told Belle that the report was inaccurate — that she had never been convicted of theft — but left the store as requested. Pl. Dep. Tr. at 149:4-152:9.

On November 29, 2022, Andrews requested confirmation from Cohen that Plaintiff "was told that the background check did not clear" so that he could send her a pre-adverse letter. Dkt. 56-16 at 2. Andrews also stated that Plaintiff could not be terminated yet because "[s]he must be allowed to contest the information that [he would] be sending her." *Id.* After Cohen confirmed that Plaintiff was advised that her background check did not clear, Andrews changed the status of Plaintiff's background check from "decisional" to "on hold," which "automatically trigger[ed] a pre-adverse letter to be sent [to Plaintiff] from the [First Advantage] system." Dkt. 56-20 ¶ 5; *see* Andrews Dep. Tr. at 32:12-33:23, 112:5-113:17. Plaintiff recalls receiving the pre-adverse letter later that day. Pl. Dep. Tr. at 173:17-21. At some point within the next five business days, Plaintiff filed a dispute with First Advantage to contest the accuracy of her report. *Id.* at 189:5-16. On December 2, 2022, Plaintiff informed Belle, the store manager, that she had initiated the dispute; Plaintiff explained that the theft conviction on her report involved an individual named "Huong Nguyen," although Plaintiff had changed her last name from Nguyen to Nguyen-Wilhite well before the date of the purported conviction. *See* Dkt. 48-12 at 9; Dkt. 56-17 at 4-5.

First Advantage did not accurately mark Plaintiff's dispute in the system. Andrews Dep. Tr. at 134:6-21. Therefore, on December 6, 2022, Plaintiff was sent an adverse letter informing her that Tapestry had rescinded her "conditional offer of employment" based on the information contained in her report. Dkt. 48-4 at 2. According to Andrews, First Advantage sent the adverse letter to Plaintiff by mistake "even though [Plaintiff] was contesting [her report]," and Andrews "never received any notification" that Plaintiff had filed a dispute. Andrews Dep. Tr. at 134:14-21. At some point, First Advantage corrected Plaintiff's report to remove the criminal conviction, but Tapestry "did [not] receive any notification in December of 2022 that [Plaintiff]'s report had been revised," *id.* at 127:20-23, and Andrews first became

aware that Plaintiff's report was corrected at a meeting with First Advantage in the fall of 2023, *id.* at 126:16-23.

## DISCUSSION

Plaintiff seeks certification of the following Rule 23(b)(3) class: "All persons with an address in the United States and its Territories about whom (1) Defendant obtained a background check for employment purposes from February 17, 2018 until the date of the court's class certification order, (2) the background check included a 'decisional' score," Br. at 4, and "(3) Tapestry applied an 'On Hold' status following internal adjudication of the background check," Reply at 6 n.5.[1]

### I.    **Legal Standard**

"A class may be certified only if, 'after a rigorous analysis,' the district court is satisfied that the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).  Pursuant to Rule 23(a), Plaintiff must establish that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "These requirements are known as numerosity, commonality, typicality, and adequate

---

[1] Plaintiff included a different third prong in her opening brief: "(3) Tapestry adjudicated the individual as ineligible based upon the background check upon internal review."  Br. at 4. The Court has amended this prong as proposed in Plaintiff's reply brief.  *See* Reply at 6 n.5; *cf. Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015) ("The Court has authority *sua sponte* to modify a proposed class definition." (collecting cases)).  This modification more closely conforms with the terminology Tapestry employs in its standardized background-check process.  *See generally supra* section II.A.

representation." *Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023). The Second

Circuit has also "recognized an 'implied requirement of ascertainability' in Rule 23." *Brecher*

*v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting *In re Initial Pub. Offerings*

*Sec. Litig.*, 471 F.3d at 30). "A class is ascertainable when defined by objective criteria that

are administratively feasible and when identifying its members would not require a mini-

hearing on the merits of each case." *Id.* at 24-25 (quoting *Charron v. Pinnacle Grp. N.Y.*

*LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)).

> "In addition to satisfying these requirements, plaintiffs must also show that one of the

three conditions of Rule 23(b) is met." *Elisa W.*, 82 F.4th at 122. Plaintiff seeks to maintain a

Rule 23(b)(3) class, which requires her to "establish (1) predominance — 'that the questions

of law or fact common to class members predominate over any questions affecting only

individual members'; and (2) superiority — 'that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy.'" *Johnson v. Nextel*

*Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)) (citing *In*

*re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013)); *see* Br. at 18. "In

short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the

legal or factual questions that qualify each class member's case as a genuine controversy can

be achieved through generalized proof' and whether 'these particular issues are more

substantial than the issues subject only to individualized proof.'" *Johnson*, 780 F.3d. at 139

(quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 118).

> On review of a motion for class certification, "a district court must 'make a "definitive

assessment of Rule 23 requirements, notwithstanding their overlap with merits issues," . . .

must resolve material factual disputes relevant to each Rule 23 requirement,' and must find

that each requirement is 'established by at least a preponderance of the evidence.'" *In re U.S.*

*Foodservice Inc. Pricing Litig.*, 729 F.3d at 117 (omission in original) (quoting *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010)). "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim' . . . because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast*, 569 U.S. at 33-34 (internal quotation marks omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

## II.    Application

The Court addresses the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3) in turn.  As explained in more detail below, the Court finds that Plaintiff has not satisfied the requirements of typicality, predominance, or superiority.

### A.    Rule 23(a) Requirements

#### 1.    *Numerosity*

Although "[t]here is no magic minimum number that establishes numerosity," courts generally "find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and . . . that it has not been satisfied when the class comprises 21 or fewer."  *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 288 (S.D.N.Y. 2019) (alteration in original) (first quoting *U.S. Fid. & Guar. Co. v. Madison Fin. Corp.*, No. 01-cv-03998 (CM), 2002 WL 31731020, at *6 (S.D.N.Y. Dec. 4, 2002); and then quoting *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998)). Tapestry admits that within the proposed class period, it caused pre-adverse action letters to be sent to at least 105 "On Hold" applicants based on information contained in those applicants' background reports.  Dkt. 56-13 at 7-8.  The Court finds that this serves as a fair approximation of the minimum number of individuals in Plaintiff's proposed class.  Because Plaintiff has shown by a preponderance of the evidence that the class contains more than forty

members, and Defendant has not argued that joinder would not be impracticable, the Court finds that the numerosity requirement has been satisfied.

  2. *Commonality*

"A 'question[] of law or fact [is] common to the class,' if the question is 'capable of classwide resolution — which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Johnson*, 780 F.3d at 137 (alterations in original) (citation omitted) (first quoting Fed. R. Civ. P. 23(a); and then quoting *Wal-Mart*, 564 U.S. at 350).  "As the Supreme Court clarified in *Wal-Mart*, commonality turns on the ability of the action to 'generate common *answers* apt to drive the resolution of the litigation.'"  *Elisa W.*, 82 F.4th at 123 (quoting *Wal-Mart*, 564 U.S. at 350).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Johnson*, 780 F.3d at 137 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)).  "[E]ven a single common question will do."  *Haymount Urgent Care PC v. GoFund Advance, LLC*, 650 F. Supp. 3d 204, 208 (S.D.N.Y. 2023) (quoting *Wal-Mart*, 564 U.S. at 359).

Plaintiff proposes two common questions of law grounded in class members' experience with "Tapestry's common hiring practices": (1) whether "placing them in a status [On Hold] that prevented them from working, being present in a store, or being paid" constitutes "adverse action" under the FCRA; and (2) whether "Tapestry's conduct was willful."  Br. at 14-15; *see id.* at 18-19; *see also* 15 U.S.C. § 1681n(a) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . .").  Tapestry argues that neither of these questions "is capable of driving resolution of this matter," Opp. at 12, because the first question "depends upon an infirm legal theory and a distortion of the record," *id.* at 13; and

the "answer to the [second] question . . . begs a different analysis under the law" for Plaintiff compared to other class members due to "Plaintiff's unique experience of having her conditional clearance revoked, being removed from the store, and being taken off the schedule before receipt of a pre-adverse action letter," *id.* at 17-18.

The Court disagrees with Tapestry's contention that Plaintiff has not satisfied the commonality requirement on these bases.  "Where the question of law involves 'standardized conduct of the defendant . . . a common nucleus of operative fact is typically presented and the commonality requirement . . . is usually met.'"  *Balverde v. Lunella Ristorante, Inc.*, No. 15-cv-05518 (ER), 2017 WL 1954934, at *6 (S.D.N.Y. May 10, 2017) (omissions in original) (quoting *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-cv-00442 (JBW), 2012 WL 170049, at *10 (E.D.N.Y. Jan. 19, 2012)).  Both of the common questions of law that Plaintiff proposes "are susceptible to classwide proof" because Tapestry has used a standardized process since 2018 to obtain consumer reports for all applicants — and thus all putative class members — to determine their employment eligibility.  *See* Andrews Dep. Tr. at 25:14-22. Although Defendant disagrees as a matter of law that an "on hold" adjudication constitutes an adverse action for purposes of the FCRA, *see* Opp. at 13-14, "the proponent of class certification need not show that the common questions 'will be answered, on the merits, in favor of the class.'"  *Johnson*, 780 F.3d at 138 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)); *cf. Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 148-49 (S.D.N.Y. 2019) (finding that plaintiffs satisfied the commonality requirement despite defendant's disagreement as to "whether [its] processes satisf[ied]" the applicable statute "as a legal matter").

Tapestry's second argument — that the factual underpinnings of Plaintiff's claim are too individualized to satisfy the commonality requirement — is likewise unavailing.

"[W]here the question of law involves 'standardized conduct . . . [,]' factual differences among the claims of class members do not preclude a finding of commonality." *Shepard v. Rhea*, No. 12-cv-07220 (RLE), 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014) (quoting *Lewis*, 2012 WL 170049, at *10) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)); *see also Marisol A.*, 126 F.3d at 377 (affirming district court's finding that commonality was satisfied where plaintiffs' "injuries derive[d] from a unitary course of conduct by a single system"). Although Plaintiff's hiring circumstances may differ from those of other class members, the common questions of law that she poses regarding Tapestry's standardized background-check process — whether an "on hold" adjudication constitutes an adverse action and whether Tapestry willfully "send[s] notice only *after*" these adjudications, Reply at 9 — are amenable to classwide resolution. *See Branch v. Gov't Emps. Ins. Co.*, 323 F.R.D. 539, 547 (E.D. Va. 2018) (holding that "the question of whether [defendant]'s actions violated Section 1681b(b)(3)(a) satisfie[d] the commonality requirement" where the defendant "admitted to using a nearly identical process throughout the class period"). Tapestry's arguments regarding Plaintiff's "unique experience" with Tapestry's standardized processes are better suited for the predominance inquiry, which examines "the relationship between the common and individual issues." *Myers v. Hertz Corp.*, 624 F.3d 537, 547-48 (2d Cir. 2010) (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)); *cf. Branch*, 323 F.R.D. at 547 n.5 ("[T]he factual differences between [plaintiff]'s [employment] application and those of the putative class members . . . , although compelling, are better discussed in connection with the more demanding Rule 23(b)(3) predominance requirement.")

3. *Typicality*

The Supreme Court has observed that "in certain 'context[s] . . . [t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (alterations and omission in original) (internal quotation marks omitted) (quoting *Wal-Mart*, 564 U.S. at 349 n.5). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* Nonetheless, the two requirements serve different purposes: "The commonality requirement 'establishes the existence of a certifiable class,' and typicality 'focuses on whether the claims of the putative class representatives are typical of the class sharing common questions.'" *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 207-08 (S.D.N.Y. 2012) (quoting *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (S.D.N.Y. 1997)).

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 241 F.R.D. 185, 197-98 (S.D.N.Y. 2007) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)). "The typicality requirement is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 441 (S.D.N.Y. 2023) (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). "Thus, typicality 'is satisfied when each class member's claim arises from the same

course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

"Minor variations in the fact patterns underlying the individual claims do not preclude a finding of typicality." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-06 (S.D.N.Y. 2015) (quoting *Robinson v. Metro–N. Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S 338). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding," *Passman*, 671 F. Supp. 3d at 441 (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002)), although "the disputed issues of law or fact" must "occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 53 (S.D.N.Y. 2019) (quoting *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 311 F.R.D. 373, 379 (S.D.N.Y. 2015)). "At bottom, the typicality requirement concerns the fairness of allowing an entire class's claim to rise or fall with the fate of the named representative's claims; thus, that representative's claims must be typical of the class so as to prevent a false prophet from bearing the standard for an entire class of claims." *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11-cv-06546 (JPO), 2013 WL 93636, at *5 (S.D.N.Y. Jan. 9, 2013).

Plaintiff maintains that "[her] claims are typical of those of the class" because, as with "all of the proposed class members, Tapestry obtained a background report about Plaintiff and used it to evaluate her eligibility for employment" and "took adverse employment action against [her] based on the background report" without providing the required notice. Br. at 15-16. Tapestry argues that typicality is not satisfied because "there is no evidence that any other person experienced similar factual circumstances to those that gave rise to Plaintiff's

purported harm." Opp. at 19. The Court agrees that the typicality requirement has not been satisfied due to the unique factual circumstances underlying Plaintiff's claim.

To illustrate why Plaintiff's claim is not typical of those of the class, the Court turns to Plaintiff's proposed common question of whether Tapestry's "on hold" adjudications constitute adverse action for purposes of section 1681b(b)(3). *Obabueki v. International Business Machines Corp.* is persuasive on this point. 145 F. Supp. 2d 371 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003). In that case, Obabueki's prospective employer, IBM, informed Obabueki by phone and by letter that it "intended to withdraw its conditional offer of employment . . . based in part on information contained in" Obabueki's background report. *Id.* at 377 (internal quotation marks omitted). Obabueki was unable to successfully dispute the report, and five days after IBM sent the first letter, it sent a second letter "inform[ing] [Obabueki] that the offer was formally withdrawn." *Id.* at 377-78. Obabueki argued that IBM had "taken adverse action" when it internally decided to withdraw Obabueki's offer the day before it sent the first letter. *Id.* at 391. The court disagreed, holding that "[a]n internal decision to rescind an offer is not an adverse action." *Id.* It explained that "[t]he FCRA defines 'adverse action,' *inter alia*, as the '*denial of employment* or any other decision for employment purposes that *adversely affects* any current or prospective employee.'" *Id.* at 391-92 (quoting 15 U.S.C. § 1681a(k)(1)(B)(ii)). Because "IBM's internal discussions had no impact on plaintiff," Obabueki did not "suffer an adverse action." *Id.* at 392. The court observed that the FCRA "expressly allows for the formation of an intent to take adverse action before complying with Section 1681b(b)(3), as it states that 'the person *intending* to take' adverse action must provide the report and description of rights. After all, how can an employer send an intent letter without having first formed the requisite intent?" *Id.* (citation and footnote omitted) (quoting 15 U.S.C. § 1681b(b)(3)) (reasoning that a contrary holding

would be "akin to finding that a party's summary judgment motion is denied before the Opinion is composed and issued, following discussions between the judge and [her] law clerk"). IBM had given Obabueki an "opportunity to discuss and dispute the report" before formally revoking the offer, which "is exactly the scenario envisioned by the FCRA." *Id.*

Tapestry's standard background-check process is analogous to the conduct that was found not to violate section 1681b(b)(3) in *Obabueki*: before commencing employment, an applicant authorizes a background check, and if the report comes back with a negative flag, Tapestry will review the report and put the applicant "on hold" upon making "an internal decision to rescind [its] offer." *Obabueki*, 145 F. Supp. 2d at 391. The applicant is then provided with a pre-adverse letter and offered the opportunity to dispute the report before Tapestry revokes the conditional offer, just as the statute requires. *See* Dkt. 48-2 at 2, 16. Plaintiff consistently tries to equate a finding of "on hold" with a final determination that the candidate is "ineligible" and therefore an adverse action. *See, e.g.*, Br. at 2, 8. As in *Obabueki*, the Court does not find that an internal decision by Tapestry to place an applicant "on hold," without more, is an adverse action under the FCRA. As courts have held, and as this Court agrees, "a company can, and indeed must, form an intent to take an adverse action *before* notifying an applicant that it may take such an adverse action." *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, 123 F. Supp. 3d 810, 823 (E.D. Va. 2015); *cf. Williams v. First Advantage LNS Screening Sols., Inc.*, 155 F. Supp. 3d 1233, 1246 (N.D. Fla. 2015) ("[T]he adjudications . . . performed by First Advantage pursuant to guidelines established by the employers . . . were not themselves adverse action. Had the employers themselves conducted the adjudications after receiving reports from First Advantage, those adjudications would clearly be 'internal decisions' akin to that made in *Obabueki* and would not be adverse action."); *Muir v. Early Warning Servs., LLC*, No. 16-cv-00521, 2016 WL 4967792, at *4

(D.N.J. Sept. 16, 2016) ("Enveloping interim assessments which do not directly affect the consumer within the scope of 'adverse action' would make compliance with the FCRA's pre-adverse notice requirements a shifting target dependent on the after-the-fact determinations of a disappointed applicant in how to parse an employment decision into a series of adverse steps." (citing *Obabueki*, 145 F. Supp. 2d at 392 n.31)).[2]

The record before the Court demonstrates that Tapestry rarely diverged from its usual background-check policy, except in Plaintiff's case: because Plaintiff was already conditionally cleared to start working for Tapestry when she was put "on hold," she then had to be taken off the schedule based on her background-check result to allow for the dispute process to run its course. Plaintiff has not identified even one other class member who was conditionally cleared to start working before being placed "on hold" due to a later-completed background check. *See* Andrews Dep. Tr. at 110:6-13 ("[Tapestry] had never had this instance before where a conditional clear had a criminal hit later."); *cf. Branch*, 323 F.R.D. at 548 (finding no typicality in section 1681b(b)(3) case where plaintiff's conditional employment offer was rescinded by employee who "deviated from" defendants' normal procedures). Because Plaintiff's experiences differ from those of the rest of the class who went through Tapestry's standard background-check process — a process that appears to

---

[2] Some courts have distinguished *Obabueki* based on circumstances not present in the instant case. *See, e.g.*, *Magallon v. Robert Half Int'l, Inc.*, No. 13-cv-01478, 2024 WL 4182846, at *5 (D. Or. Sept. 13, 2024) (distinguishing *Obabueki* where applicants "ha[d] to wait several days [to] more than two weeks to learn that [their] report[s] contain[ed]" potentially disqualifying information); *Wilson v. First Advantage Background Servs. Corp.*, 490 F. Supp. 3d 506, 509 (D. Conn. 2020) (distinguishing *Obabueki* where the plaintiff "had already been removed from the hiring pool for the job for which she applied" when she received a pre-adverse action notice); *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 540 (E.D. Pa. 2012) (distinguishing *Obabueki* where applicants had no meaningful opportunity to contest their reports, but agreeing with the *Obabueki* court that IBM's "multi-step process was precisely what Congress envisioned when it enacted [the FCRA]").

comply with the FCRA —Plaintiff could prove her own claim without proving the claims of the rest of the class.  In other words, the claims of the class will not necessarily "rise or fall with the fate" of Plaintiff's claim, *Rapcinsky*, 2013 WL 93636, at *5, because her claims do not "have the same essential characteristics as the claims of the class at large," *Monaco v. Sullivan*, 737 F. App'x 6, 16 (2d Cir. 2018) (summary order) (quoting 1 *Newberg on Class Actions* § 3:34 (5th ed.)).  It is thus not apparent that Plaintiff "will advance the interests of all class members as [she] pursue[s] [her] own claim[]." *In re MTBE Prods. Liab. Litig.*, 241 F.R.D. at 198; *cf. Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-00238, 2015 WL 4994549, at *13 (E.D. Va. Aug. 19, 2015) (certifying class because there were "no factual or legal differences between [the named plaintiff's] claim and the class members' claims in general").  For these reasons, the Court finds that Plaintiff has not satisfied the typicality requirement.

### 4.  *Adequacy*

"A class is adequately represented when its counsel 'is qualified, experienced, and generally able to conduct the litigation.'" *Local 1180, Communications Workers of America v. City of New York*, 392 F. Supp. 3d 361, 373 (S.D.N.Y. 2019) (quoting *Marisol A.*, 126 F.3d at 378).  "Plaintiffs also must show that there is no conflict of interest between the named plaintiffs and other members of the class." *Id.* (citing *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons*, 502 F.3d 91, 99 (2d Cir. 2007)).  Tapestry does not contest the ability of Plaintiff's counsel to adequately represent the class, nor does it argue that there is a conflict of interest that would preclude adequacy.  *See generally* Opp.  Because the record indicates that Plaintiff's counsel is well-qualified and there are no conflicts of interest among the class, the Court finds that the adequacy requirement has been satisfied.

### B.    Rule 23(b) Requirements

#### 1.    *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  "Where individualized questions permeate the litigation, those 'fatal dissimilarit[ies]' among putative class members 'make use of the class-action device inefficient or unfair.'" *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017) (alteration in original) (quoting *Amgen*, 568 U.S. at 470).  "The predominance inquiry mitigates this risk by 'ask[ing] whether the common, aggregation-enabling, issues in the case are *more prevalent or important* than the non-common, aggregation-defeating, individual issues.'" *Id.* (alteration in original) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

"Even if Rule 23(a)'s commonality requirement may be satisfied," Rule 23(b)'s "predominance criterion is far more demanding." *Johnson*, 780 F.3d at 138 (quoting *Amchem Prods.*, 521 U.S. at 623-24).  "Like the commonality inquiry, a court examining predominance must assess (1) the 'elements of the claims and defenses to be litigated'; and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief.'" *Id.* (quoting 1 *McLaughlin on Class Actions* § 5:23 (11th ed.)).  "Predominance requires a further inquiry, however, into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Id.*  "The distinction between 'individual' and 'common' questions is thus central to the predominance analysis." *In re Petrobras Sec.*, 862 F.3d at 270.

Plaintiff contends "common issues predominate" in this case because "[t]he central issue for each class member's section 1681b(b)(3) claim is the same," namely:

whether Tapestry['s] adjudication of class members into a status rendering them ineligible to be onboarded, start work, be paid, or even be present in one of Tapestry's retail stores, all before providing them with any notice or a copy of the report, was an "adverse employment action" within the meaning of the FCRA.

Br. at 18-19. In response, Tapestry argues that the predominance requirement has not been satisfied for the same reasons it believes there is no commonality: "Plaintiff's individual claim . . . is dependent entirely on her individual experience" and "departures from Tapestry's lawful approach." Opp. at 21. Tapestry also argues that "Plaintiff's shifting position on the applicable statute of limitations gives rise to individualized issues that defeat predominance." *Id.* at 22. The Court agrees with Tapestry that the predominance requirement has not been satisfied here.

As previously discussed in the context of typicality, the viability of Plaintiff's claim depends on whether Tapestry took adverse action against her when it rescinded its conditional offer after Plaintiff had already begun working, a scenario that is not present with any other member of the putative class. Because Tapestry's general background-check policy does not, on its face, violate the FCRA, *see generally Obabueki*, 145 F. Supp. 2d 371, and because Plaintiff has not identified other class members whose offers were rescinded after they conditionally began to work like Plaintiff, the claims of other class members would likewise depend on whether they experienced deviations from Tapestry's standard procedures. This, however, would require "individualized proof . . . to establish each class member's entitlement to relief," which defeats predominance. *Johnson*, 780 F.3d at 138 (quoting 1 *McLaughlin on Class Actions* § 5:23 (11th ed.)); *cf. Branch*, 323 F.R.D. at 550 ("[Plaintiff] has failed to satisfy the predominance requirement" because the "central common question . . . is whether [defendant] took an adverse action as to each class member," which "cannot be

answered by looking at the [standard process] itself" and "necessarily involves examining [defendant's] conduct with each individual.").

Plaintiff has also not shown that there were any systematic deficiencies in Tapestry's procedures that could be proved with "generalized evidence" on a classwide basis, such as evidence that First Advantage's dispute process was futile or pretextual. Indeed, Tapestry attests that at least six applicants successfully disputed information contained in their background reports. *See* Dkt. 56-13 at 9. Instead, the viability of Plaintiff's claim depends on individualized issues regarding departures from Tapestry's usual procedures that are both "more prevalent [and] important" than "the common, aggregation-enabling, issues." *Tyson Foods*, 577 U.S. at 453; *see, e.g.*, Andrews Dep. Tr. at 134:10-21 ("There were so many things that happened wrong with [Plaintiff's] background check . . . . [Plaintiff] did contest the information, but [First Advantage] didn't mark it accurately in the system. So the adverse letter went out even though she was contesting and [Tapestry] never received any notification on it.").

The possibility of individualized statute-of-limitations inquiries for each class member further exacerbates these predominance issues. Under the FCRA, an "action must be brought 'not later than the earlier of — (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.'" *Trans Union LLC v. Lindor*, 393 F. App'x 786, 788 (2d Cir. 2010) (summary order) (quoting 15 U.S.C. § 1681p). Because Plaintiff's proposed class period spans more than two years, Tapestry argues that the Court would need to conduct "individualized inquiries to determine the appropriate statute of limitations for each putative class member" based on "whether she learned of the violation." Opp. at 22-23. Although "[c]hallenges based on the statute of limitations . . . have usually been rejected and

will not bar predominance," *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 573 (S.D.N.Y. 2021) (omission in original) (quoting *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002)), the specter of member-by-member limitations inquiries only adds to the number of "splintering individualized questions" that already predominate in this case and "augurs that a class action will devolve into a lengthy series of individual trials." *Wing v. Metro. Life Ins. Co.*, No. 04-cv-08558 (BSJ), 2007 WL 9814564, at *10 (S.D.N.Y. May 31, 2007) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998)). Accordingly, Plaintiff has not satisfied the predominance requirement.

  *2. Superiority*

 "In determining whether the superiority requirement is met, the Court may consider the following non-exclusive list of relevant factors" as set forth in Rule 23(b)(3):

> the class members' interest in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.

*Wood v. Mike Bloomberg 2020, Inc.*, --- F. Supp. 3d ---, 2024 WL 3952718, at *11 (S.D.N.Y. Aug. 27, 2024) (quoting Fed. R. Civ. P. 23(b)(3)). "'Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy' and 'the damages suffered are small in relation to the expense and burden of individual litigation.'" *Id.* (quoting *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014)). Plaintiff argues that a class action would be superior here because, among other things, "class members would never think to bring individual claims because they are unaware that Tapestry has violated their rights," Br. at 21, and due to the "identical, fairly small claims for relief" of class members "who, if required to proceed individually, probably would not assert their claims," *id.* at 22 (quoting *Williams v. LexisNexis Risk Mgmt. Inc.*, No. 06-cv-00241, 2007

WL 2439463, at *9 (E.D. Va. Aug. 23, 2007)).  Tapestry counters that "[s]uperiority is not satisfied" because "the individualized inquiries associated with the limitations period issue, the standing issues, and the merits (or lack thereof) of each putative class member's claim would overwhelm proceedings in this case."  Opp. at 23.

Although the existence of a uniform background-check policy and the small recovery amounts for each class member would ordinarily weigh in favor of a finding of superiority, the Court has concerns regarding manageability that "follow[] largely from [its] findings on predominance."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 546 (S.D.N.Y. 2018); *see also id.* ("[A] finding of non-predominance is easily paired with a finding that a class action is unmanageable and hence not a superior form of litigation." (quoting 2 *Newberg on Class Actions* § 4:74 (5th ed.))).  As previously discussed, individual issues regarding class members' experiences with Tapestry's background-check process predominate over common ones, which lessens the impact that the existence of a uniform policy has on the superiority inquiry.  Even where a company-wide policy undergirds the claims of all putative class members, "[w]ith respect to superiority, the need for individualized determinations of liability defeat any efficiency to be gained from using the class mechanism."  *Cassie v. JB Sec.*, No. 17-cv-06587 (LGS), 2018 WL 11449903, at *1 (S.D.N.Y. Nov. 16, 2018); *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12-cv-08450 (JMF), 2013 WL 6061340, at *7 (S.D.N.Y. Nov. 15, 2013) (similar); *cf. Branch*, 323 F.R.D. at 553 (finding that superiority was not satisfied in section 1681b(b)(3) case despite the fact "that [the class's] claims [were] relatively small, and that many class members would not bring suit because they [were] not aware of their FCRA rights" because each class member "would need to find and present their own proof that" the defendant "deviated from" its otherwise FCRA-

compliant background-check process).  For these reasons, the Court finds that the superiority requirement has not been satisfied.

## CONCLUSION

Because Plaintiff has not demonstrated by a preponderance of the evidence that the Rule 23(a) requirement of typicality or the Rule 23(b)(3) requirements of predominance and superiority have been satisfied, Plaintiff's motion for class certification is DENIED.  The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. 47.

Dated: February 14, 2025
       New York, New York

SO ORDERED.

_Jennifer Rochon_

JENNIFER L. ROCHON
United States District Judge